

# In the Missouri Court of Appeals Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102786 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County, Missouri |
| vs. | ) | 13SL-CR10672-01 |
| | ) | |
| CURTIS STOKES, JR., | ) | Honorable Robert S. Cohen |
| | ) | |
| Appellant. | ) | Filed: June 14, 2016 |

## OPINION

Curtis Stokes, Jr., appeals the judgment entered upon his convictions following a jury trial in the Circuit Court of St. Louis County of one count of first-degree robbery and one count of armed criminal action. Stokes contends that the trial court erred by improperly admitting hearsay evidence, and by improperly instructing the jury that it could convict Stokes of armed criminal action in connection with the lesser included offense of second-degree robbery. We affirm.

### Factual and Procedural Background

On the evening of October 18, 2013, Stokes approached Kendrick Latchman ("Victim") on Horizon Village Drive in Spanish Lake, Missouri, pointed a gun at his face, patted him down, and asked him whether he had any money. Victim gave Stokes the money he had in his pocket. Stokes threatened Victim that he would harm him if Victim had not given him all the money he had. Stokes also took some of Victim's other possessions including his mobile phone.

During the robbery, Victim saw another man standing in the vicinity by a tree. Victim presumed the man was serving as a lookout for Stokes. The man was later identified by Victim as John Bennett. After Stokes and Bennett were arrested, they were together at the police station during the booking process. A police detective overheard Stokes and Bennett get into an argument. Over Stokes's objection at trial, the detective testified about the out-of-court statements Stokes and Bennett made during the argument.

The court instructed the jury on both first-degree robbery and the lesser included offense of second-degree robbery. The court also gave an armed criminal action instruction in connection with each offense. Stokes objected to giving the armed criminal action instruction in connection with the second-degree robbery instruction. Stokes was convicted of first-degree robbery and armed criminal action. This appeal follows.

### Point I: Admission of Hearsay Evidence

In his first point on appeal, Stokes argues that the trial court abused its discretion by improperly admitting the out-of-court statements made by Stokes and Bennett during their argument at the police station after their arrest in this case. We disagree.

We will reverse a trial court's ruling on the admission of evidence only if the court clearly abused its discretion. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo.banc 2006). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* Moreover, we review the trial court's ruling for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 223-24.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *State v. Simmons*, 233 S.W.3d 235, 237 (Mo.App.E.D. 2007) (citing *State v.*

2

*Kemp*, 212 S.W.3d 135, 146 (Mo.banc 2007). Hearsay statements are generally inadmissible. *Id.* However, the admission of a party opponent is not hearsay. *Id.* A statement may be admitted as the admission of a party opponent if it is relevant and material to the case and is offered by the opposing party. *Id.* The admission of a criminal defendant is relevant and material if it tends to incriminate the defendant, to connect the defendant to a crime, or to manifest the defendant's consciousness of guilt. *Id.* The defendant need not expressly acknowledge his or her guilt for the statement to qualify as an admission. *State v. Isa*, 850 S.W.2d 876, 894 (Mo.banc 1993). To determine whether the statement constitutes an admission, the statement must be viewed in light of the surrounding circumstances. *State v. Floyd*, 347 S.W.3d 115, 124 (Mo.App.E.D. 2011) (citing *Isa*, 850 S.W.2d at 894).

Here, the police detective testified at trial that he overheard an argument at the police station between Stokes and Bennett after the two men had been arrested in connection with the robbery of Victim. The detective testified that Bennett "began screaming" at Stokes to "own what he did" and "take his case." Although Stokes did not initially respond, Bennett continued to "go at" Stokes verbally. Stokes eventually responded to Bennett: "Man, shut the f--- up, quit snitching." The detective testified that he took "snitching" to mean "telling the truth" about the robbery and that he believed Stokes's statement implied that he was responsible for the robbery and was attempting to keep Bennett from relating that fact to the police.

In light of the detective's testimony and the circumstances in which the statements were made, the trial court could reasonably have concluded that Stokes's statement at a minimum *connected* him to the robbery. Thus, the trial court did not abuse its discretion in concluding that Stokes connected himself to the offense by telling Bennett to stop "snitching" on him after they had each been arrested for the robbery. Stokes did not have to expressly acknowledge his guilt

3

of the offense. It was sufficient that his statement permitted an inference that he was connected to or committed the offense.

Turning to Bennett's statement, in which he urged Stokes to "own what he did" and "take his case," we hold that the trial court could reasonably have admitted the statement in order to help to explain the context in which Stokes told Bennett to "quit snitching." *See State v. Webber*, 982 S.W.2d 317, 323 (Mo.App.S.D. 1998) (admitting statement "not . . . for the truth of the matter asserted; rather, . . . to supply the context for [other admissible] statements made"); *State v. Molasky*, 655 S.W.2d 663, 668-69 (Mo.App.E.D. 1983) (same); *State v. Spica*, 389 S.W.2d 35, 46-48 (Mo.banc 1965) (admitting third party's statements in connection with defendant's admissions against interest, "not [as] direct evidence but admissible only in connection with the [defendant's] reply," and stating that "[t]estimony of such statements is a recognized exception to the hearsay rule"). Thus, the trial court did not abuse its discretion in admitting Bennett's statement. Point I is denied.

## Point II: Second-Degree Robbery and Armed Criminal Action

In his second point on appeal, Stokes argues that although the jury convicted him of first-degree robbery, the trial court erred when it instructed the jury that it could convict him of armed criminal action in connection with the lesser included offense of second-degree robbery. We disagree.

Whether a jury was instructed properly is a question of law. *State v. Miner*, 363 S.W.3d 145, 148 (Mo.App.E.D. 2012). In reviewing for instructional error, we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury, and there is a substantial indication of prejudice. *Id.* We presume the jury was composed of reasonably

4

intelligent and attentive jurors capable of following the court's instructions. *State v. Williams*, 948 S.W.2d 429, 433 (Mo.App.E.D. 1997); *State v. Williams*, 611 S.W.2d 26, 30 (Mo.banc 1981). Prejudice lies where the defendant demonstrates that in the absence of the instructional error, there was a reasonable probability that the verdict would have been different. *State v. Davies*, 330 S.W.3d 775, 789 (Mo.App.W.D. 2010).

First-degree robbery is defined as forcibly stealing property and in the course thereof using or threatening the immediate use of a dangerous instrument against any person. § 569.020.1.[1] Second-degree robbery is defined simply as forcibly stealing property. § 569.030.1. And armed criminal action is defined as committing any felony under the laws of Missouri by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon. § 571.015.1.

Since here, after the court submitted first- and second-degree robbery instructions each with a companion armed criminal action instruction, the jury convicted Stokes of *first-degree* robbery, there is some question whether Stokes was prejudiced by the court's instruction on armed criminal action in connection with *second-degree* robbery. We need not resolve that question, however, because we find no merit to Stokes's argument here that it was incompatible and erroneous to submit to the jury the offense of armed criminal action in connection with second-degree robbery.

Stokes contends that it was error to instruct the jury that it could convict him of armed criminal action in connection with second-degree robbery because, in his view, a finding that he committed second-degree robbery is incompatible with a finding that a weapon was involved in his commission of the robbery. But as various Missouri cases demonstrate, *e.g., State v. Busey*,

---

[1] All statutory references are to RSMo (Supp. 2012) unless otherwise indicated.

143 S.W.3d 6, 8 (Mo.App.W.D. 2003), it is entirely proper for a jury to convict a defendant of armed criminal action in connection with second-degree robbery, since a finding that the defendant forcibly stole property is compatible with a finding that the defendant committed the robbery by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.

Stokes's argument is essentially that finding a defendant guilty of second-degree robbery means that the jury necessarily found that the defendant did not have a weapon at the time of the commission of that felony. We disagree for two reasons. First, a weapon may be involved in the commission of a robbery without the perpetrator specifically *displaying* or *threatening the use* of a deadly weapon. In such a case, the evidence would not support giving a first-degree robbery instruction but still might support giving a second-degree robbery instruction, since the weapon—though it was not displayed or its use threatened—may have been involved in the defendant's alleged commission of forcible stealing.

The Missouri Supreme Court explained recently in *State v. Jones*, 479 S.W.3d 100, 106 (Mo.banc 2016), that the definition of armed criminal action under section 571.015.1 "was intended to reach as broadly as possible." The Court concluded that the plain meaning of the words in the statute "ma[d]e it clear that the legislature intended section 571.015.1 to reach as far as possible and to discourage defendants from arming themselves during the commission of felonies by imposing a separate punishment when the defendant's criminal purpose is assisted or aided by ready access to a dangerous weapon." *Id.* at 108. The Court held that a jury could reasonably infer that a gun "aided" or "assisted" a defendant even if it merely "bolster[ed] his confidence to enter" a place where he intended to commit a felony by giving the defendant "the ready means to overcome any resistance." *Id.* at 109.

6

Moreover, under Missouri law, a jury need not acquit the defendant of a greater offense before considering instructions on lesser included offenses. *Tisius v. State*, 183 S.W.3d 207, 217 (Mo.banc 2006). Thus, convicting Stokes of second-degree robbery instead of first-degree robbery would not necessarily have meant that the jury *acquitted* him of first-degree robbery. Nor, by extension, would Stokes's hypothetical conviction on second-degree robbery have meant that every juror rejected that he displayed or threatened the use of an apparent deadly weapon. As is well established, in every criminal trial by jury it is possible that the jury will decline to convict or acquit and instead will hang on an offense submitted to them. Accordingly, we find that the trial court's instruction on armed criminal action in connection with second-degree robbery did not misdirect, mislead, or confuse the jury, and thus was not erroneous.

In light of our determination that the court's instruction on armed criminal action in connection with second-degree robbery was not erroneous, we need not determine whether it prejudiced Stokes given that Stokes was found guilty of first-degree robbery. Point II is denied.

### Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur.

7